IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JOSEPH L. GWALTNEY III,<br><br>      Plaintiff,<br><br>    v.<br><br>BIG BOUNCE AMERICA LLC and<br>HD SPECTRUM LLC (d/b/a HDS ENTS),<br><br>      Defendants. | **COMPLAINT**<br>[Jury Trial Demanded] |

**NOW COMES** Plaintiff Joseph L. Gwaltney III ("Plaintiff"), through counsel, for his Complaint against Big Bounce America LLC and HD Spectrum LLC (d/b/a HDS ENTS) (collectively "Defendants"), alleging the following upon information and belief:

## NATURE OF THE ACTION

1. This action is brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, to remedy violations of Plaintiff's rights under the FCRA that occurred in connection with Plaintiff's application for employment with Defendants and the subsequent rescission of his job offer based upon a consumer report.

2. At issue are the following requirements governing an employer's use of consumer reports:

   a. Before accessing a consumer report, an employer must provide a clear, conspicuous, and stand-alone disclosure that a consumer report may be obtained (15 U.S.C. § 1681b(b)(2)(A)(i));

   b. Before accessing a consumer report, an employer must obtain written authorization from the applicant for procurement of the consumer report (15 U.S.C. § 1681b(b)(2)(A)(ii));

1

c. Before taking adverse action based upon a consumer report, an employer must provide the job applicant with reasonable advance notice of its intent to do so (15 U.S.C. § 1681b(b)(3)(A));

d. Before taking adverse action based upon a consumer report, an employer must provide the job applicant with a copy of the consumer report (15 U.S.C. § 1681b(b)(3)(A)(i));

e. Before taking adverse action based upon a consumer report, an employer must provide the job applicant with a description of their rights under the FCRA (15 U.S.C. § 1681b(b)(3)(A)(ii)); and,

f. After taking adverse action based upon a consumer report, an employer must provide notice of the adverse action to the job applicant along with (i) contact information for the consumer reporting agency that supplied the report, (ii) notice that the consumer reporting agency did not make the decision to take the adverse action, (iii) notice of the applicant's rights to dispute the accuracy or completeness of the report, and (iv) notice of the applicant's right to receive an additional copy of the report if requested within sixty days (15 U.S.C. § 1681m(a)).

3. Upon information and belief, Defendants willfully or recklessly failed to comply with any of the foregoing statutory obligations with respect to Plaintiff's application for employment with Defendants; particularly since the FCRA requires that an employer certify to the consumer reporting agency from whom a consumer report is procured that the employer will comply with the foregoing requirements of the FCRA as a condition to procuring a consumer report (15 U.S.C. § 1681b(b)(1)).

## JURISDICTION AND VENUE

4. Jurisdiction of this court arises under 15 U.S.C. §1681p and 28 U.S.C. §1331.

2

Case 5:19-cv-00108-D   Document 1   Filed 03/18/19   Page 2 of 16

5. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff is a citizen and resident of Wake County, North Carolina and is not an infant, incompetent, nor in the military service of the United States. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant HD Spectrum, LLC ("HDS Ents") is a Delaware limited liability company that conducts business within North Carolina.

8. According to its LinkedIn profile, HDS Ents has specialized in the conceptualization, development and execution of creative and exciting experiences and events since 2007.

9. Upon information and belief, HDS Ents owns, operates and controls various entities for each of the "creative and exciting experiences and events" that it offers to the public, including: Big Bounce, Headphone Disco, Twisted Cinema, Campus Superstar Live, The Throwback Time Machine, Light It Up, and Roller Rave (collectively the "HDS Entities").

10. Upon information and belief, HDS Ents and the HDS Entities conduct related activities performed under unified operations or common control and for a common business purpose such that they are a single integrated enterprise.

11. Defendant Big Bounce America LLC ("Big Bounce") is a Delaware limited liability company that conducts business within North Carolina.

12. HDS Ents acted as an agent for Big Bounce with respect to Plaintiff.

13. At all times relevant hereto, Defendants have been "users" of "consumer reports" pertaining to "consumers" in North Carolina as those terms are used within the FCRA.

## FACTUAL BACKGROUND

14. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

3

15. Defendants collectively maintain one of the largest touring inflatable events in the world featuring a variety of custom-built inflatable attractions, including large bounce houses, inflatable obstacle courts, and large mazes, slides, and climbing walls.

16. Defendants and their employees tour the country, constructing their inflatable attractions at locations across the United States.

<u>Plaintiff's Application for Employment</u>

17. On October 8, 2018, Plaintiff contacted Mr. Josh Kinnersley (Business Manager, HDS Ents) to inquire into employment opportunities; specifically, Plaintiff sought to join Big Bounce's tour as part of its "build crew."

18. On October 10, 2018, Mr. Kinnersley offered Plaintiff an employment opportunity as an operations technician subject to satisfactory completion of an employment Background Check ("Job Offer").

19. Plaintiff lost on or more employment opportunities in reliance upon the Job Offer.

<u>Defendant's Misclassification of Employees as Independent Contractors</u>

20. Upon information and belief, Defendants intended to hire Plaintiff as an "employee" as defined by N.C.G.S. § 95-25.2(4).

21. Defendants intended to act as an "employer" of Plaintiff as defined by N.C.G.S. § 95-25.2(5).

22. Although Plaintiff would have properly been classified as an employee of Defendants, upon information and belief, Defendants conspired to falsely classify Plaintiff and similarly situated employees or applicants as "independent contractors" as part of a scheme to, among other things:

   a. avoid maintaining certain insurance on Plaintiff and similarly situated employees;
   
   b. avoid paying certain taxes to state and federal governments.

c. avoid responsibility for paying minimum wages or overtime as required by state and federal law; and,

   d. avoid responsibility for violations of the Fair Credit Reporting Act as alleged herein.

23. As an operations technician, Plaintiff, along with Defendants' other employees, would be responsible for unpacking Defendants' equipment and gear, inflating and maintaining bounce houses, constructing ball pits and climbing towers, erecting lighting truss systems, and thereafter repacking Defendants' equipment into various trucks and other transport vehicles.

24. The tasks Plaintiff would have been required to perform were essential functions of Defendants' operations.

25. In addition to acting as an operations technician for Defendants, Plaintiff would have been responsible for driving one of Defendants' vehicles to the next location on the tour.

26. Defendants intended to maintain full and complete control over the way in which Plaintiff performed his work functions.

27. Defendants intended to direct Plaintiff in the specific ways and methodologies for performing his work functions.

28. Plaintiff would have been trained on the specific ways, means, and methodologies for performing the tasks necessary to complete his work functions.

29. Defendants would have determined the tasks that Plaintiff was responsible for completing.

30. Defendants would have determined the way in which Plaintiff completed the tasks.

31. Defendants would have determined the order in which Plaintiff was to complete the requisite tasks.

32. Plaintiff would not have had the ability to exercise independent judgment and discretion with regard to the performance his work responsibilities for Defendants.

33. Plaintiff would have been performing the tasks requested of him to perform by Defendants.

34. Plaintiff would not have had the ability to set his own work hours; instead, Plaintiff would have been working on Defendants' schedule and, upon information and belief, would have been working approximately 80 hours per week.

35. The tasks that Plaintiff would have been performing on behalf of Defendants did not require the utilization of any specialized skills, knowledge, or training; Defendants intended to provide basic training to Plaintiff to perform the tasks necessary to complete his work responsibilities.

36. Defendants would have provided Plaintiff with all the tools and equipment required to perform his job responsibilities.

37. Plaintiff would not have been permitted to set his own pay; instead, Defendants intended to pay him $600 per week.

38. Plaintiff would have been compensated the $600 per week throughout his relationship with Defendants and did not have the possibility of losing money on his work for Defendants.

39. Plaintiff would not have been permitted to hire assistants with regard to his work responsibilities.

40. Plaintiff would not have had control over any other person or entity with regard to the work he was to perform for Defendants.

41. Defendants would have maintained the power and ability to exert full control over each and every task that Plaintiff performed on behalf of Defendants. For example, Defendants would have directed Plaintiff on the methods for unpacking Defendants' transport vehicles, the methods for constructing Defendants' inflatable attractions, the methods for maintaining Defendants' attractions at particular tour locations, the methods for packing Defendants' gear and other equipment into Defendants' transport vehicles, and the methods for transporting

6

Case 5:19-cv-00108-D     Document 1     Filed 03/18/19     Page 6 of 16

Defendants' gear and other equipment to other tour locations.

Defendants Procured a Consumer Report in Violation of the FCRA

42. Defendants procured a consumer report pertaining to Plaintiff from Hire Image, a consumer reporting agency, on or about October 10, 2018 ("Background Check").

43. Upon information and belief, Defendants did not "clearly and conspicuously" disclose their intent to obtain the Background Check before doing so.

44. Upon information and belief, Defendants did not obtain Plaintiff's written consent to procure the Background Check before doing so.

45. Upon information and belief, the Defendants routinely conduct background checks on job applicants as part of a standard screening process that utilizes consumer reports.

46. Upon information and belief, each time the Defendants procure a consumer report for employment purposes, they certify to the respective consumer reporting agency that they are aware of their obligations under the FCRA and will comply therewith.

47. At the time that Defendants procured the Background Check, they knew or should have known that they were violating the FCRA by failing to clearly and conspicuously disclose their intent to do so on a stand-alone disclosure form.

48. The text of the FCRA is clear and unambiguous with respect to the disclosure requirement in stating:

> *a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless – (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes . . .* (15 U.S.C. § 1681b(b)(2)(A)(i))

49. Regulatory agencies have released at least three informal staff opinion letters relevant to the

issue at hand that would provide additional clarification and notice to the Defendants regarding the foregoing obligation under the FCRA. See FTC, Opinion Letter, 1997 WL 33791227, at *1 (Oct. 21, 1997); FTC, Opinion Letter, 1998 WL 34323748, at *2 (Feb. 11, 1998); and FTC, Opinion Letter, 1998 WL 34323756, at *1 (June 12, 1998).

50. Courts have found that similar violations of 15 U.S.C. § 1681b(b)(2)(A)(i) sufficient to sustain claims for willful violations of the FCRA. *See e.g., Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir., 2017).

51. 15 U.S.C. § 1681b(b)(2)(A)(i) has been subject to high profile class action litigation that Defendants knew or should have known.

52. Despite the clear statutory, regulatory, and judicial notice of Section 1681b(b)(2)(A)(i)'s disclosure requirements, upon information and belief, Defendants' standard hiring practice involves the willful or reckless procurement of consumer reports without clearly and conspicuously disclosing their intent to do so on a document that consists solely of the disclosure.

53. At the time that Defendants procured the Background Check, they also knew or should have known that they were violating the FCRA by failing to obtain Plaintiff's written consent.

54. The text of the FCRA is clear and unambiguous with respect to the written consent requirement in stating:

> *a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless – (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.* (15 U.S.C. § 1681b(b)(2)(A)(ii))

55. Courts have articulated this requirement more than a hundred times.

56. Despite the clear statutory and judicial notice of Section 1681b(b)(2)(A)(ii)'s written

authorization requirement, upon information and belief, Defendants' standard hiring practice involves the willful or reckless procurement of consumer reports, including Plaintiff's, without first obtaining the job applicants' written authorization.

<u>Defendants Rescinded Plaintiff's Job Offer in Violation of the FCRA</u>

57. On October 12, 2018, Mr. Kinnersley notified Plaintiff that the Job Offer had been withdrawn based upon the Background Check.

58. Defendants did not provide any advance notice to Plaintiff prior to making the decision to rescind the Job Offer.

59. Defendants did not provide Plaintiff with a copy of the Background Check before rescinding the Job Offer.

60. Defendants did not provide Plaintiff with a description of his rights under the FCRA before rescinding the Job Offer.

61. Defendants did not provide Plaintiff with any opportunity to review, dispute, or explain the Background Check before rescinding the Job Offer.

62. Plaintiff desired the opportunity to explain why the information contained within his Background Check was not an accurate reflection of his character.

63. Not being allowed the opportunity to provide Defendants with his account of the facts and circumstances leading up to the events identified and contained within his Background Check caused Plaintiff considerable emotional distress.

64. Not being allowed the opportunity to provide Defendants with his account of the facts and circumstances leading up to the events identified and contained within his Background Check was extremely frustrating to Plaintiff.

65. Not being allowed the opportunity to provide Defendants with his account of the facts and circumstances leading up to the events identified and contained within his Background Check was embarrassing and humiliating to Plaintiff.

66. Plaintiff believed that Defendants assumed that Plaintiff was a disreputable, loathsome, untrustworthy, and contemptible person; all of which caused Plaintiff considerable shame and embarrassment.

67. Plaintiff believed that, had he been allowed the opportunity to review his report with Defendants and explain the information identified therein, Defendants would not have considered him to be a disreputable, loathsome, untrustworthy, or contemptible person.

68. Plaintiff believed that, had he been allowed the opportunity to review his report with Defendants and explain the information identified therein, Defendants would have considered Plaintiff to be a man of high moral character, even if they did not ultimately hire him.

69. Upon information and belief, had Defendants allowed him the opportunity to review and explain the Background Check, Defendants would not have rescinded the job offer.

70. Not being allowed the opportunity to provide Defendants with his account of the facts and circumstances leading up to the events identified and contained within his Background Check caused Plaintiff to lose sleep.

71. At the time that Defendants rescinded the Job Offer, they knew or should have known that they were violating the FCRA by failing to provide advance notice of their intent to do so to Plaintiff along with a copy of the consumer report and a disclosure of Plaintiff's rights under the FCRA.

72. The text of the FCRA is clear and unambiguous with respect to these pre-adverse action requirements in stating:

> *Before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall*

> *provide to the consumer to whom the report relates – (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this title . . .* (15 U.S.C. § 1681b(b)(3)(A)(i-ii))

73. Regulatory agencies have provided additional clarity and notice of Section 1681b(b)(3)(A)'s pre-adverse action requirements. See e.g., Federal Trade Commission letter dated June 9, 1998 to A. Michael Rose, Esq., regarding Sections 604(b)-607 of the Fair Credit Reporting Act (stating that "[15 U.S.C. §1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.); FTC Staff Summary § 604(b)(3) item 5; Hawkey, FTC Informal Staff Opinion Letter (Dec. 18, 1997); Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter (noting that five days' notice "appears reasonable").

74. Courts have articulated these pre-adverse action requirements in more than a hundred legal opinions. See e.g., *Brown v. Lowe's Cos., Inc.*, 52 F. Supp. 3d 749 (W.D.N.C. 2014) (holding that pre-adverse action notice is required sufficiently in advance of the adverse action so that the consumer may rectify any inaccuracies in the report); *Beverly v. Wal-Mart*, 3:07-cv-469 (E.D. Va. January 11, 2008) (Consent Order providing that the mailing of Adverse Action Notices shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices); *Williams v. Telespectrum*, 3:05-cv-853 (E.D. Va. November 7, 2006) (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report); *Johnson v. ADP*, 768 F. Supp.2d 979 (D.

11

MN 2011); *Daniel, et al v. Swift Transportation Corp.*, CV-11-1548-PHX-ROX (AZ January 9, 2012); *Reardon v. Closetmaid*, 2:08-cv-01730 (W.D. Pa. April 27, 2011); *Miller v. Johnson & Johnson, Janssen Pharm., Inc.*, 80 F.Supp. 3d 1294-1297 (M.D.Fla. 2015) (granting summary judgment to plaintiff and allowing the question of willfulness to proceed to trial).

75. Despite the clear statutory, regulatory and judicial notice of Section 1681b(b)(3)(A)(i-ii)'s pre-adverse action requirements, upon information and belief, Defendants' standard hiring practice involves the willful or reckless disqualification of job applicants based upon consumer reports without providing advance notice, a copy of the consumer report, and a statement of rights under the FCRA.

76. Rather, on October 12, 2018, after the adverse action had been taken, Defendants merely notified Plaintiff via email that "After reviewing your background check, we have decided to withdraw the contract offer."

### Defendants' Non-Compliance with the FCRA was Willful

77. Upon information and belief, the Defendants routinely conduct Background Checks on job applicants as part of a standard screening process.

78. To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports of an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 § U.S.C. 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 § U.S.C. 1681b(b)(1)(A).

79. Upon information and belief, the Defendants, or either of them, knowingly executed a certification providing that they would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information

contained in a consumer report – and subsequently failed to comply with the certified representation.

80. Upon information and belief, Defendants knew or should have known of their obligations under the FCRA at the time they procured Plaintiff's Background Check and were on notice of their need to make a reasonable inquiry into the nature of those obligations to the extent they had any doubt.

81. Upon information and belief, Defendants were aware of or should have been aware of the obligations imposed upon them as users of consumer reports based upon the clear and unambiguous statutory text, regulatory guidance, and voluminous case law interpreting the same.

82. Upon information and belief, Defendants understood the FCRA's requirements at all times relevant hereto, but willfully or recklessly misclassified Plaintiff and similar consumers as independent contractors to, among other things, avoid their responsibilities under the FCRA.

83. Upon information and belief, the cost of complying with the FCRA is negligible compared to the harm that failing to do so can or did cause Plaintiff and similarly situated consumers. For example, compliance with the pre-procurement requirements could be accomplished by adding a single page disclosure and authorization form to the pre-hire employment paperwork; and compliance with the pre-adverse action requirements could be accomplished by providing Plaintiff with a copy of the consumer report and summary of rights, notice of their intent to rely upon the consumer report to Plaintiff's detriment, and the patience to allow Plaintiff an opportunity to review and address the contents of the consumer report.

84. Notwithstanding the foregoing allegations which are incorporated herein by reference, Defendant procured Plaintiff's consumer report and took adverse action based thereon in

willful or reckless disregard of Plaintiff's rights under the FCRA.

85. As a result, Defendants violated Plaintiff's substantive rights under the FCRA, including:

86. As a direct and proximate result, Plaintiff has suffered harms, including, but not limited to:

   a. The deprivation of his substantive right to a "clear and conspicuous" disclosure of Defendants' intentions to obtain his consumer report before they did so;

   b. The deprivation of his substantive right to keep the information in his consumer report private and confidential from Defendants absent his written consent;

   c. The deprivation of his substantive right to receive, review, dispute and/or explain the content of his consumer report before adverse action was taken thereon;

   d. The deprivation of his substantive right to receive and review an explanation of his rights under the FCRA before adverse action was taken based upon his consumer report;

   e. Loss of privacy;

   f. Reputational harm;

   g. Lost wages; and,

   h. Emotional distress, including, but not limited to, the embarrassment, frustration, and anxiety that naturally arose from Defendants' violations of his substantive and procedural rights under the FCRA that were created by Congress to avoid just such harms.

87. Pursuant to the FCRA, Plaintiff is entitled to actual or statutory damages, punitive damages, costs, and his reasonable attorneys' fees in an amount to be proved at trial.

## COUNT I
## Willful Violations of the FCRA - 15 U.S.C. § 1681n

88. The foregoing allegations are incorporated by reference and realleged herein.

89. The Defendants were "users" of a consumer report for employment purposes.

90. The Defendants procured a consumer report pertaining to Plaintiff.

91. Before procuring the consumer report, Defendants recklessly or willfully failed to:

    a. "clearly and conspicuously" disclose their intent to do so in violation of 15 U.S.C. § 1681b(b)(2)(A)(i); and,

    b. obtain Plaintiff's written consent in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

92. Before taking adverse action based upon the Background Check, Defendants recklessly or willfully failed to:

    a. provide Plaintiff with a copy of the consumer report in violation of 15 U.S.C. § 1681b(b)(3)(A)(i); and,

    b. provide Plaintiff with a description of his rights under the FCRA in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii).

93. Accordingly, Plaintiff is entitled to actual or statutory damages, punitive damages, costs, and his reasonable attorneys' fees in an amount to be proved at trial.

## COUNT II, *in the alternative to Count I*
## Negligent Violations of the FCRA - 15 U.S.C. § 1681o

94. The foregoing allegations are incorporated by reference and realleged herein.

95. To the extent that Defendants' violations of the FCRA alleged in Count I are found to have been merely negligent, then, in the alternative, Plaintiff is entitled to actual damages, costs, and his reasonable attorneys' fees in an amount to be proved at trial pursuant to 5 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff prays the Court for judgment as set forth below:

1. That Plaintiff have and recover actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees against Defendants, or either of them, pursuant to Count I.

2. That, *in the alternative to Count I*, Plaintiff have and recover actual damages, costs, and reasonable attorneys' fees against Defendants, or either of them, pursuant to Count II.

3. For a trial by jury on all issues so triable; and,

4. For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 18th day of March, 2019.

       **MAGINNIS LAW, PLLC**
       *Counsel for Plaintiff*

BY: /s/ Asa C. Edwards
     ASA C. EDWARDS IV
     N.C. State Bar No. 46000
     4801 Glenwood Avenue, Suite 310
     Raleigh, North Carolina 27612
     Telephone:   919.526.0450
     Fax:          919.882.8763
     aedwards@maginnislaw.com